UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHIRECE CLARK,

      Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

      Defendant.

Case No. 5:21-cv-10451
District Judge Judith E. Levy
Magistrate Judge Anthony P. Patti

_____/

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO
GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No.
12), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 16) and REMAND THIS MATTER TO THE COMMISSIONER</u>**

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment (ECF No. 12), **DENY** Defendant's motion for summary judgment (ECF

No. 16), and **REMAND** this matter to the Commissioner for further action.

**II.    REPORT**

      Plaintiff Chirece Clark brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security

(Commissioner) partially granting her applications for disability insurance (DI) and

supplemental security income (SSI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 12), the Commissioner's cross-motion for summary judgment (ECF No. 16), Plaintiff's reply brief (ECF No. 17), and the administrative record (ECF No. 10).

### A.     Background and Administrative History

Plaintiff filed DI and SSI applications on September 27, 2013, alleging that her disability began on September 1, 2012, at the age of 43.  (ECF No. 10, PageID.234-243.)  In her disability report, she lists bipolar disorder, anemia, and back problems as limiting her ability to work.  (ECF No. 10, PageID.262.)  Her applications were denied on December 5, 2013.  (ECF No. 10, PageID.156-157, 180-187.)

### 1.     Initial hearing and decision

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (ECF No. 10, PageID.190-191.)  On January 13, 2015, ALJ Dawn M. Gruenberg held a hearing (ECF No. 10, PageID.96-133), and on March 12, 2015, she issued an opinion which determined that Plaintiff was not disabled within the meaning of the Social Security Act (ECF No. 10, PageID.139-155).

Plaintiff submitted a request for review of the hearing decision.  (ECF No. 10, PageID.137-138.)  However, on April 26, 2016, the Appeals Council denied Plaintiff's request for review.  (ECF No. 10, PageID.78-84.)  Thus, ALJ

Gruenberg's decision became the Commissioner's final decision.  Plaintiff filed an appeal, which resulted in an order remanding the case "so that the ALJ [could] obtain the opinion of a qualified medical advisor on the issue of equivalence as to all of plaintiff's physical and mental impairments during the relevant period," and re-assess the RFC after the opinion was obtained.  (ECF No. 10, PageID.671-695, 732-733, 745-767.)  *Clark v. Comm'r of Soc. Sec.*, No. 16-12167, 2017 WL 4172498, at *9 (E.D. Mich. Aug. 17, 2017) (Davis, M.J.), *report and recommendation adopted*, 2017 WL 4122416 (E.D. Mich. Sept. 18, 2017) (Cleland, J.).

### 2.    Subsequent hearing and decision

Prior to the Court's order, Plaintiff filed additional DI and SSI applications on August 5, 2016, which the Appeals Council rendered as duplicates and consolidated with the previous applications.  (ECF No. 10, PageID.703.)  On December 5, 2016, on remand, ALJ Lauren Burstein conducting a hearing, at which Plaintiff and a vocational expert (VE), Toni Marie McFarland, testified.  (ECF No. 10, PageID.624-670.)  ALJ Burstein issued a new decision on March 4, 2020, finding:

> Based on the application for a period of disability and disability insurance benefits filed on September 27, 2013, the claimant was not disabled under sections 216(i) and 223(d), respectively, of the Social Security Act through December 31, 2017, the date last insured.

3

> Based on the application for supplemental security income filed on September 27, 2013, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on January 11, 2019.

(ECF No. 10, PageID.546-575.)

Plaintiff submitted a request for review of the hearing decision, which the Appeals Council denied on January 5, 2021.  (ECF No. 10, PageID.538-545.) Thus, ALJ Burstein's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on February 28, 2021.  (ECF No. 1.)

**B.    Plaintiff's Medical History**

The administrative record contains approximately 1369 pages of medical records, which were available to the ALJ at the time of her March 4, 2020 decision.  (ECF No. 10, PageID.308-537, 933-2073 [Exhibits 1F-44F].)  These materials will be discussed in detail, as necessary, below.

**C.    The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2012, the alleged onset date.  (ECF No. 10, PageID.554.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the right shoulder and right knee, diabetes mellitus, anemia,

obesity, anxiety, affective disorder, vertigo, obstructive sleep apnea, asthma, and schizoaffective disorder. (ECF No. 10, PageID.554.) At **Step 3**, the ALJ found that since the alleged onset date, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (ECF No. 10, PageID.554-557.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[1] and determined that Plaintiff had the RFC:

> to perform sedentary work . . . except she can occasionally climb stairs and ramps but can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, crouch, and kneel. She can never crawl. She can occasionally push and pull with her lower extremities including operating foot pedals and controls. She can occasionally reach overhead with the right upper extremity. She must avoid frequent exposure to extreme temperatures, pulmonary irritants such as smoke, noxious odors, fumes, and gases. She could only stand for 15 minutes at a time. She requires use of a hand held assistive device for ambulation and to arise from sitting on an occasional basis. She is able to initiate and carry out simple, routine tasks. She can understand and remember simple instructions. She should avoid fast-paced production work or tandem tasks. She can have occasional interaction with coworkers or the public.

(ECF No. 10, PageID.557-564.) At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (ECF No. 10, PageID.564-565.) At **Step 5**, the ALJ determined that prior to January 11, 2019, when Plaintiff's age

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

category changed to an individual closely approaching advanced age, there were

jobs that existed in significant numbers in the national economy that Plaintiff could

perform, including microfilming document preparer, addressing clerk/general

office worker, and table worker.  (ECF No. 10, PageID.565-566.)  However,

beginning January 11, 2019, when Plaintiff's age category changed, there were no

jobs that existed in significant numbers in the national economy that Plaintiff could

perform.  (ECF No. 10, PageID.566.)  The ALJ therefore concluded that Plaintiff

"was not disabled prior to January 11, 2019, but became disabled on that date and

has continued to be disabled through the date of [the] decision . . . ."  (ECF No. 10,

PageID.566.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see

also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of

6

evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the

merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651

(quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

###    E.    Analysis

Plaintiff asserts entitlement to reversal or remand of the portion of the ALJ's

opinion that denied benefits because: (1) neither the ALJ's evaluation of the

Paragraph B criteria for mental functioning, nor the ALJ's assessment of her

subjective symptoms, is supported by substantial evidence; and (2) the ALJ

improperly weighed medical opinions.  (ECF No. 12, PageID.2075-2077, 2089-

2102.)  The Commissioner opposes Plaintiff's motion, arguing that substantial

evidence supports the ALJ's Paragraph B analysis, and that the ALJ properly

evaluated the medical opinions of record.  (ECF No. 16, PageID.2109-2112, 2114-

2136.)  In her reply brief, Plaintiff reiterates her arguments.  (ECF No. 17.)

###    1.    Paragraph B criteria

Plaintiff frames her argument as both a challenge to the ALJ's evaluation of

her subjective symptoms and of the Paragraph B criteria, but she mostly addresses

her subjective symptoms in the context of her Paragraph B argument, so I have

done the same.

For analysis of mental functioning at Steps 2 and 3, an ALJ must focus on

the following four functional areas known as the "paragraph B criteria":

"Understand, remember, or apply information; interact with others; concentrate,

persist, or maintain pace; and adapt or manage oneself."  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); 20 C.F.R. 404, Subpt. P, App. 1, § 12.00E. These four areas are evaluated on a five-point scale: "None, mild, moderate, marked, and extreme."  20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  Plaintiff bears the burden of proving that her impairments meet or medically equal a particular listing.  *See Buress v. Sec'y of Health and Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987).  To medically equal Listing 12.04 (depressive, bipolar, or related disorders) under the Paragraph B criteria, Plaintiff was required to establish one extreme limitation or two marked limitations in the above areas of mental functioning.  20 C.F.R. 404, Subpt. P, App. 1, § 12.04.  An ALJ's explanation as to why a claimant did not meet or medically equal a listing need not be confined to the section of the decision explicitly addressing Step 3.  *Staggs v. Astrue*, No. 2:09-cv-00097, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) ("Nor is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis.") (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)).

### 2.    RFC and opinion evidence

The Plaintiff bears the burden of proof at Steps 1-4, including proving his

RFC.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)

("[D]uring the first four steps, the claimant has the burden of proof; this burden

shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health &

Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990), and *Cole v. Sec'y of Health &

Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987)); *see also Jordan v. Comm'r of

Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the

burden of proving her lack of residual functional capacity.").  The Commissioner

has the burden of proof only on "the fifth step, proving that there is work available

in the economy that the claimant can perform[.]"  *Her v. Comm'r of Soc. Sec.*, 203

F.3d 388, 391-92 (6th Cir. 1999).

As Plaintiff filed her applications before March 27, 2017, the ALJ applied

the standards set forth in 20 C.F.R. §§ 404.1527 and 416.927 to analyze the

medical opinions of record.  Under those standards, the ALJ must consider all

medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R.

§ 404.1527(b).  The regulations define medical opinions as "statements from

acceptable medical sources that reflect judgments about the nature and severity of

[a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and

prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's]

physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). ALJs "will consider

. . . administrative medical findings and medical evidence from our Federal or

State agency medical or psychological consultants . . . [,]" but "are not required to

adopt any prior administrative medical findings[.]" 20 C.F.R. § 404.1513a(b)(1).

### **The "Treating Physician Rule" – then applicable**

Under the regulations in place at the time of the applications, the ALJ had to

give deference to the opinions of a treating source "since these sources are likely to

be the medical professionals most able to provide a detailed, longitudinal picture of

[a patient's] medical impairment(s) and may bring a unique perspective to the

medical evidence that cannot be obtained from the objective medical findings

alone . . . ." 20 C.F.R. § 404.1527(c)(2); *Blakley*, 581 F.3d at 408. Although

abrogated in 20 C.F.R. § 404.1520c for claims filed after March 27, 2017, the

regulation that applied to Plaintiff's case stated that:

> Medical opinions from treating sources about the nature and severity
> of an individual's impairment(s) are entitled to special significance
> and may be entitled to controlling weight. If a treating source's
> medical opinion on an issue of the nature and severity of an
> individual's impairment(s) is well-supported by medically acceptable
> clinical and laboratory diagnostic techniques and is not inconsistent
> with the other substantial evidence in the case record, the adjudicator
> must give it controlling weight.

SSR 96-8p, 1996 WL 374184, at *7. In other words, under the "Treating

Physician Rule" then in existence, an ALJ could not "substitute his own medical

judgment for that of the treating physician where the opinion of the treating

11

physician [was] supported by the medical evidence." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quotation marks and citation omitted).

Where an ALJ did not afford controlling weight to a treating physician's opinion, the ALJ would consider the following factors when deciding the weight to give any medical opinion: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency with the record as a whole; and (5) specialization. 20 C.F.R. § 404.1527(c). Special care had to be taken when considering the treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (if the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements).

However, while an ALJ was to "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] g[a]ve your treating source's medical opinion," 20 C.F.R. § 404.1527(c)(2), and had to "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight[,]" *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (*per curiam*) (internal quotations omitted), there was no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. § 404.1527(c), *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations then in place did not require "an

12

exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Moreover, the failure to discuss the requisite factors could constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547). *See also Betty v. Comm'r of Soc. Sec.*, No. 15-cv-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016). "In the last of these circumstances, the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Friend*, 375 F. App'x at 551.

The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations

> where a claimant knows that his physician has deemed him disabled
> and therefore "might be especially bewildered when told by an
> administrative bureaucracy that she is not, unless some reason for the
> agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d
> Cir. 1999). The requirement also ensures that the ALJ applies the
> treating physician rule and permits meaningful review of the ALJ's
> application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33
> (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45. Thus, the reason-giving requirement is "particularly

important when the treating physician has diagnosed the claimant as disabled."

*Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008)

(citing *Rogers*, 486 F.3d at 242).

### 3.    ALJ Burstein's findings

The ALJ found that Plaintiff had only moderate limitations in all four areas

of mental functioning. (ECF No. 10, PageID.556-557.) Further, the ALJ

discounted the opinion of Dr. Suniti Barua, Ph.D. (ECF No. 10, PageID.562-563),

who opined that Plaintiff had marked limitations in two of the four areas—

interaction with others and the ability to adapt or manage oneself (ECF No. 10,

PageID.1686-1691), as well as that of Dr. Sharon Beal, Ph.D. (ECF No. 10,

PageID.563), who indicated that Plaintiff was markedly limited in several areas of

mental functioning, including the ability to work in coordination with others

without being distracted, to interact appropriately with others, and to respond

appropriately to changes in the work setting (ECF No. 10, PageID.495-498). For

the reasons described below, the Court should find that the ALJ failed to create a

logical bridge between the evidence and her Step 3 decision.

### a.   Understanding, remembering, and applying information

The ALJ concluded that Plaintiff had only a moderate limitation in

understanding, remembering, and applying information (ECF No. 10, PageID.556),

which "refers to the abilities to learn, recall, and use information to perform work

activities," 20 C.F.R. 404, Subpt. P, App. 1, § 12.00E, stating:

> Records in May 2015, indicate she had no evidence of language or
> cognitive dysfunction.  (43F/4).  Her immediate memory was
> somewhat deficient but she had a good remote memory.  (12F/2).  She
> responded appropriately to questions at her hearing, appearing to
> understand questions asked of her.  (Hearing observations).

(ECF No. 10, PageID.556.)

Plaintiff asserts first that throughout her medical records and in her own

testimony, she complained of confusion, forgetfulness, memory issues, and poor

concentration and focus, all of which support greater limitations in this area.  (ECF

No. 12, PageID.2092-2093 (citing ECF No. 10, PageID.330, 431-432, 649, 653-

654, 971, 1520, 1523, 1526, 1529, 1541, 1544-1545, 1564, 1567, 1604-1607, 1751,

2039, 2042-2043).)  The records Plaintiff cites do contain notations regarding her

confusion, forgetfulness, poor concentration, and short-term memory defects.  The

majority, however, are simply summaries of Plaintiff's own subjective reports

regarding her symptoms, rather than objective medical findings, the former of

15

which an ALJ is not required to accept or adopt.  *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992).

Two of the records Plaintiff cites note memory impairment on examination (*see* ECF No. 12, PageID.2092-2093 (citing ECF No. 10, PageID.1751-1756)), but the ALJ acknowledged evidence of Plaintiff's poor concentration and memory issues, both at Step 3 and in her RFC assessment, and supportably found that Plaintiff required limitation to simple and routine tasks, citing to records in which Plaintiff was noted to have normal concentration and attention span (ECF No. 10, PageID.561-563 (citing ECF No. 10, PageID.1532-1533, 1542, 1932).) Specifically, the ALJ stated, "The claimant did have some deficits in immediate memory; however, these have been accommodated by limiting her to simple and routine tasks."  (ECF No. 10, PageID.564.)  Thus, accepting Plaintiff's subjective statements and/or assertions that the record supports those statements would require the Court to re-weigh the evidence, which it must not do.  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (not within the province of the Court to "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ").

Moreover, I note that Dr. Barua, to whose opinion Plaintiff asserts the ALJ should have given greater weight, believed Plaintiff to have only a *mild* limitation

16

in her ability to understand, remember, and apply information.  (ECF No. 10,

PageID.562, 1688.)

### b.   Concentration, persistence, and maintenance of pace

For the Paragraph B criteria of concentration, persistence, and maintenance

of pace, which "refers to the abilities to focus attention on work activities and stay

on task at a sustained rate," 20 C.F.R. 404, Subpt. P, App. 1, § 12.00E, the ALJ

found Plaintiff to have a moderate limitation, stating:

> While she appeared to have some impairments in memory, she
> exhibited normal concentration.  (26F/13, 19, 22; 41F/35).  While she
> reported she heard voices at times, they were non-commanding.
> (26F/4).  She reported she was managing symptoms with help of her
> medications.  (26F/6).  She reported a plethora of side effects in a
> function report from medications; however, she denied them to
> doctors.  (*Compare* 3E/11 *with* 16F/5).

(ECF No. 10, PageID.556-557.)

### i.   Focus and concentration

Plaintiff first challenges the ALJ's finding here with citation to her

complaints of poor focus and concentration throughout the record, which she

asserts "cannot simply be dismissed without a proper review."  (ECF No. 12,

PageID.2095 (citing ECF No. 10, PageID.331, 1561, 1564, 1567, 1605, 1607-

1608).)  She also points to statements in her own Function Report.  (ECF No. 12,

PageID.2096 (citing ECF No. 10, PageID.279).)  Again, however, an ALJ need not

accept or adopt a claimant's subjective complaints if they are inconsistent with the

objective medical evidence of record.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003).  And here, the ALJ cited to records from 2016, 2017, and 2019, in which Plaintiff was noted as exhibiting no impairment in concentration.  (ECF No. 10, PageID.556-557, 562 (citing ECF No. 10, PageID.1532-1533, 1542, 1559, 1565, 1568, 1932).)  Further, Plaintiff's citation to records from 2015 noting her frequent change of topics and a record from 2016 where she is noted to have impaired concentration and attention span (ECF No. 12, PageID.2095 (citing ECF No. 10, PageID.1545, 1608)), does not in and of itself establish a lack of substantial evidence for the ALJ's conclusions.  *See Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.") (quotation marks and citation omitted).

### ii.   Nature of hallucinations

Plaintiff next challenges the ALJ's reliance on the non-commanding nature of her hallucinations, stating: "While the ALJ states her auditory hallucinations are non-commanding, that is not entirely accurate.  There are sessions where Plaintiff states that the hallucinations are commanding, in addition to her testimony." (ECF No. 12, PageID.2095 (citing ECF No. 10, PageID.1529, 1605).)  Such evidence, however, does not negate the ALJ's supported findings that Plaintiff often denied hallucinations, was observed to have normal thought processes

despite indications of auditory hallucinations, and that on at least one occasion in 2016, she reported non-commanding auditory hallucinations.  (ECF No. 10, PageID.557, 561-562 (citing ECF No. 10, PageID.1532, 1542, 1550, 1756, 1932).)  And even if the ALJ erred by not giving sufficient consideration to Plaintiff's *sometimes* commanding hallucinations, Plaintiff points to nothing in the record to support the conclusion that such evidence justifies a finding of more than a moderate limitation in this area of mental functioning.  In fact, Dr. Barua also found only a moderate limitation in Plaintiff's ability to concentrate, persist, and maintain pace.  (ECF No. 10, PageID.1688.)

### iii.    Pharmaceutical management

Finally, Plaintiff takes issue with the ALJ's finding that Plaintiff reported her symptoms were managed with medication, asserting that the record established regular medication adjustments.  (ECF No. 12, PageID.2096 (citing ECF No. 10, PageID.339, 493, 1517, 1520, 1523, 1526, 1529, 1605); ECF No. 17, PageID.2139-2140.)  While Plaintiff may be correct about this, most of the documents she cites only show that she attended medication reviews, and that she was being prescribed various medications with some alterations in dosage, without any explanation, like lack of effectiveness.  (See ECF No. 10, PageID.339, 493, 1517, 1520, 1523, 1526, 1605.)  One record does state: "Will d/c trazodone since both pt and son report there is no benefit from it noted, and increase Latuda to 160

19

mg and add Depakote 250 mg BID to help stabilize her mood and reduce anger

management issues." (ECF No. 10, PageID.1605.) But this does not negate the

accuracy of the ALJ's findings, as the records she cited in support do indicate that

at times during the relevant period, Plaintiff reported management of symptoms

with the help of medication (ECF No. 10, PageID.557, 563-564 (citing ECF No.

10, PageID.522, 1552-1553)), and Plaintiff again presents nothing to establish that

any medication issues she may have had warrant a finding of a greater limitation in

this area, as is her burden, *Walters*, 127 F.3d at 529; *Jordan*, 548 F.3d at 423.

### c.      Interaction with others

Both Drs. Barua and Beal found Plaintiff markedly limited in at least certain

aspects of social interaction. (ECF No. 10, PageID.496, 1688.) Nevertheless, with

regard to Plaintiff's ability to interact with others, the ALJ found her moderately

limited, stating:

> The claimant complained of irritability, anxiety, and becoming easily
> angered. She also reported some visual hallucinations. (Hearing
> testimony). On some examinations, she exhibited an irritated mood;
> however, on others she was euthymic. (Compare 25F/28 with 26F/3,
> 6). While at times she was paranoid, indicating she felt others were
> talking poorly about her, on other examinations she presented as in a
> good mood with a sense of humor. (3F/11). In September 2013, she
> had a lot of energy and reported "feeling good." (3F/12, 13). Still,
> she presented as depressed on other occasions. (3F/13, 21).
> However, records in 2018 indicate she had no behavioral problems or
> impulsivity. (41F/55). On examination in December of 2018, she had
> a euthymic mood, appropriate affect, and was cooperative and
> pleasant with the therapist. (41F/72).

(ECF No. 10, PageID.556.)  As explained more fully below, the Court should find that the ALJ's analysis here – when considered in combination with the ALJ's analysis of Plaintiff's ability to adapt and manage herself and of the medical opinions – fails to provide an accurate and logical bridge between the evidence regarding Plaintiff's patently fluctuating mental condition, and the ALJ's rejection of the marked limitations opined by Drs. Barua and Beal.

In the Step 3 analysis, the ALJ discusses Plaintiff's fluctuating moods, with accurate support from the record.  And despite Plaintiff's argument that the ALJ did not discuss certain records documenting her depression, irritability, and inner thoughts of violence, the ALJ did consider these issues, and is not required to discuss every piece of evidence.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his decision every bit of evidence submitted by a party.") (quotation marks and citation omitted).  For example, as part of her RFC assessment, the ALJ stated:

> Records in 2018 indicate the claimant heard voices in the past, years ago, but she reported no current auditory o[r] visual hallucinations. (36F/44).  Nevertheless, she reported she was having difficulty remembering details. (Id).  She complained of being irritable, depressed, emotional, snappy, anxious, and moody. (Id).  However, she denied suicidal or homicidal ideations and did not appear to be responding to internal stimuli. (Id).  Given these symptoms, the undersigned limited her interaction with others and limited her to only simple and routine tasks, not at a production pace.

21

(ECF No. 10, PageID.562.)

However, the Court should find that neither this Step 3 analysis, nor the ALJ's explanations for discounting Dr. Barua and Dr. Beal's opinions that Plaintiff suffered marked limitations in her ability to interact with others, sufficiently indicate why the described fluctuations in Plaintiff's mood demonstrate merely moderate limitations. For example, the ALJ's emphases on Plaintiff's sometimes euthymic mood (as further demonstrated at p. 27, *infra*.) may be overstated. Euthymia is a "stable mental state or mood in those affected with bipolar disorder,[2] that is neither manic nor depressive." *See* Merriam-Webster, Medical Dictionary, https://www.merriam-webster.com/medical/euthymia. However, it is phasic and not necessarily dispositive of function or outcome. According to the "Neuropsychological Functioning in Euthymic Phase of Bipolar Affective Disorder" (BPAD) study published by the National Institutes of Health:

> A substantial proportion of euthymic bipolar disorder patients have neuropsychological impairment which can have a significant impact on the overall functional recovery.
>
> *      *      *
>
> Euthymic phase in BPAD is defined as normal range of mood, implying the absence of depressed or elevated mood. Symptoms in

---

[2] The ALJ found Plaintiff's affective disorder and schizoaffective disorder to be severe impairments. (ECF No. 10, PageID.554.) Affective disorders are mood disorders, the main types of which include depression and bipolar disorder. *See* https://www.healthline.com/health/affective-disorders (last visited August 30, 2022).

euthymic phase are not entirely absent but are subdued enough, so that mood and normal activity are not affected to a great extent. Treatment of BPAD includes the conventional mood stabilizers (e.g., lithium, valproate, lamotrigine, and carbamazepine) and some of the atypical antipsychotics.  Originally, it was thought that while in a euthymic mood state, a patient with BPAD had no impairment and experienced a return to normal functioning.  This may not hold true as patients with BPAD in a euthymic state experience difficulties in various domains of social and occupational functioning. Neurocognitive deficits are impairments in cognitive ability that is closely linked to the functioning of specific brain areas, neural pathways, or cortical networks.  Research in this area has found that neurocognitive deficits are characteristic of many psychiatric disorders and that they are present in addition to the more typical symptoms of a disorder.  Some of the deficits seem to be affected by the mood state the patient is experiencing, while others continue through periods where the patient is generally asymptomatic or euthymic.  During euthymic mood states, patients with BPAD continue to show deficits in executive functioning, verbal and visual memory, and sustained attention.  These deficits, which are present during asymptomatic states, may be trait-like characteristics of the disorder.

In fact, 40%–60% of euthymic patients present with neurocognitive disturbances and which may affect the everyday activities, patients' ability to work and causes delay in reemployment.  Therefore, neurocognition clearly has an important role in functional outcomes of BPAD patients.

*   *   *

This study showed deficits in neuropsychological functioning in euthymic phase of BPAD in psychomotor performance, attention, executive function, verbal learning and memory, visuospatial and construction ability, and visual learning and memory.  In addition, it showed the correlation of clinical factors (illness duration, number of episodes, and residual depressive and manic symptoms) with neuropsychological functioning.

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5968641/ (footnotes omitted).

That Plaintiff sometimes experienced a stable mood, then, fails to provide much explanation for why she had a moderate, as opposed to marked, limitation in her ability to interact with others.  While it may be debatable whether this deficiency constitutes reversible error warranting remand in and of itself, it is striking, especially when considered alongside additional deficiencies in the ALJ's analyses of Plaintiff's ability to adapt and manage herself and of the medical opinions, discussed below.  Accordingly, remand for further consideration and articulation of Plaintiff's ability to interact with others in the context of her fluctuating mental condition would provide much needed clarification.  In this and other grounds for remand discussed below, the ALJ must clearly consider and explain why Plaintiff is capable of "substantial gainful activity" with such fluctuations.  20 C.F.R. §§ 404.1505(a), 404.1510.

### d.    Adapting and managing oneself

Finally, with regard to Plaintiff's ability to adapt and manage herself, which "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting," 20 C.F.R. 404, Subpt. P, App. 1, § 12.00E, the ALJ found that Plaintiff experienced a moderate limitation, stating:

> On mental status examinations she indicated she enjoyed drawing, making crafts, and jewelry.  (44F/4).  While she alleged in a function report she had no appetite, she reported normal sleep and appetite. (*Compare* 3E/6 *with* 41F/13).  She also indicated in therapy sessions she tended to overeat.  (9F/17).  She appeared fairly groomed and dressed appropriate for the seasons.  (26F/22).  While the claimant

24

indicated she did not follow written or spoken instruction well, she completed a very detailed and descriptive functional report.  (See generally 3E; 3E/11).  Furthermore, the record notes she worked for Ford Motor Company for years and was attending school in February 2012.  (36F/44).  The claimant indicated she could prepare herself a sandwich, but she relied on her daughter to do the laundry, grocery shop, and help her get dressed.  (Hearing testimony).

(ECF No. 10, PageID.557.)  The Court should find this analysis inadequate.

First, as Plaintiff contends (ECF No. 12, PageID.2097-2098) and the Commissioner acknowledges (ECF No. 16, PageID.2127), the referenced school and work history is outside the relevant time period, as it is apparently from February 2012, and Plaintiff's alleged onset date is September 1, 2012. Additionally, the ALJ's statements are entirely unqualified by the evidence Plaintiff cites, including her testimony that she was too depressed to paint anymore.  (ECF No. 12, PageID.2097 (citing ECF No. 10, PageID.641).)  While it is true that an ALJ need not discuss every piece of evidence in the record, *Kornecky*, 167 F. App'x at 507-08, he or she must not ignore inconsistent evidence, *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014). Thus, Plaintiff's argument here that the "ALJ's analysis amounts to selective picking apart of only portions of the record without a full and fair evaluation of the entirety of the reports" (ECF No. 17, PageID.2143), *i.e.*, ignores inconsistent evidence or selectively parses the various medical reports,  *Germany-Johnson*, 313 F. App'x at 777, raises a concern shared by the Undersigned.

25

Even more importantly, however, the criteria on which the ALJ relied in finding a moderate impairment in this area—Plaintiff's affinity for drawing, painting, and crafting, dress and appetite, and ability to complete her function report—is perplexing, especially in light of the opinion by both Drs. Barua and Beal that Plaintiff suffered from a marked limitation in her ability to adapt and manage herself.  While the ALJ's analyses of those opinions provides some additional explanation for her conclusion regarding this area of functioning, it is not enough to make up for the deficient analysis at Step 3.

ALJ Burstein afforded "little weight" to Dr. Barua's opinion that Plaintiff met Listing 12.04, stating:

> As for the opinion evidence, Dr. Suniti Barna,[3] Ph.D., indicated the claimant had mild limitation in understanding, remembering, or applying information, marked limitation in interacting with others, and marked limitations in adapting or managing oneself. (33F/4-7). She also indicated the claimant had moderate limitations in concentrating, persisting, or maintaining pace.  The undersigned gives this opinion little weight.  Dr. Barna reviewed the medical evidence but did not evaluate the claimant in person.  Furthermore, her assessment is not consistent with the medical records showing improvement with treatment and relatively mild mental examination findings.  For example, on mental status examination in November of 2019, the claimant was alert with normal concentration and good judgment. (41F/35).  She also had normal thought process and stream of mental activity despite her indications of auditory hallucinations. (Id).  She previously denied hallucinations on examinations in 2018. (36F/49).  Furthermore, Dr. Barna indicated the claimant met 12.04, C criteria, citing exhibits without specific evidence and reporting the claimant needed continued medication and counseling.  However, this

---

[3] The ALJ committed a scrivener's error in the spelling of Dr. Barua's name.

assessment does not indicate how the claimant had minimal capacity to adapt to changes in her environment or demands that were not already part of her daily life.  It is also inconsistent with her statements indicating she enjoyed drawing, making crafts and jewelry and was painting downtown.  (41F/41).  This assessment is inconsistent with statements indicating symptoms improved with medications and the claimant was not always compliantly taking psychotropic medications.  (Id at 41).  *Notably, therapy records indicate she had good hygiene and grooming, was pleasant and cooperative with a euthymic mood despite being off medications for over a month.*  (41F/41).

(ECF No. 10, PageID.562-563 (emphasis in original).)

While examining relationship is a valid consideration when analyzing medical opinions under 20 C.F.R. §§ 404.1527(c) and 416.927(c), as Plaintiff asserts, such a consideration is odd here given that ALJ Burstein sought Dr. Barua's opinion on whether Plaintiff met or medically equaled a Listing at Step 3 pursuant to the Court's remand order, and could have requested an examination in addition to answers to the written interrogatory questions that Dr. Barua completed (ECF No. 12, PageID.2099-2102), as the Commissioner admits (ECF No. 16, PageID.2130-2131).  The Commissioner argues that this was not all that the ALJ relied upon to discount Dr. Barua's opinion (ECF No. 16, PageID.2130-2131), which is true, but the Court should find that the rest of the ALJ's analysis does not sufficiently explain why she declined to find marked as opposed to moderate limitations in Plaintiff's abilities to interact with others and to adapt and manage herself specifically, especially in light of the fact that Dr. Beal expressed very

similar opinions (ECF No. 10, PageID.495-498), and the opinion the ALJ afforded

great weight—that of state agency psychological consultant Kathy Morrow,

Ph.D.—was from 2013, and also did not include findings from an examination

(ECF No. 10, PageID.564).

On the basis of the above, the Court should find that the ALJ did not give

good reasons for discounting Dr. Barua's opinion, at least with regard to these two

specific areas of mental functioning.  And the cumulative effect of that deficiency,

along with the others described above at Step 3, necessitates a remand.  *See Beck*

*v. Haik*, 377 F.3d 624, 644-45 (6th Cir. 2004) (extending the cumulative error

doctrine, in which the court considers the "combined effect" of multiple trial errors

to determine whether they are unfairly prejudicial, to civil cases), *overruled on*

*other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc); *see*

*also Taylor v. Harris*, 505 F.Supp. 153, 155 n.4 (E.D. Tex. 1981) ("The doctrine of

cumulative error is a necessary corollary of the harmless error rule found in Rule

61 of the Federal Rules of Civil Procedure.  That is, while the various errors found

by the reviewing court, considered singly, may be harmless, their total effect is

such as to prejudice the substantial rights of one or the other of the parties.").

While perhaps no singular error warranting reversal has been identified, and the

ALJ did, overall, thoroughly consider and review the evidence in the record, the

Undersigned does not see an "accurate and logical bridge" between the evidence

28

and the ALJ's determination at Step 3 that Plaintiff has only moderate limitations in her abilities to interact with others and to adapt and manage herself.  *See Gross v. Comm'r of Soc. Sec.*, 247 F.Supp.3d 824, 829 (E.D. Mich. 2017) (the Court "may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result.") (quotation marks and citation omitted); *see also Wilson*, 378 F.3d at 544 (requiring an appellate record that would "permit[] meaningful review" of the ALJ's application of the rules).  And to medically equal Listing 12.04 (depressive, bipolar, or related disorders) under the Paragraph B criteria, Plaintiff was required to establish one extreme limitation or two marked limitations in the above areas of mental functioning.  20 C.F.R. 404, Subpt. P, App. 1, § 12.04.  It is *unclear to this subsequent reviewer*, *Friend,* 375 F. App'x at 550, why the ALJ repeatedly rejected opinions or evidence of marked limitations and significant fluctuations in various areas of Plaintiff's mental functioning and found that she had the ability to engage in gainful activity on a sustained basis.  As the issue of the ALJ's evaluation of medical opinions will be visited on remand, no further discussion of that topic is needed here.

### F.    Conclusion

Accordingly, Plaintiff has shown cumulative deficiencies in the ALJ's analysis that could upend the ALJ's decision as to Step 3 and Plaintiff's RFC.  For

the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's

motion for summary judgment (ECF No. 12), **DENY** Defendant's motion for

summary judgment (ECF No. 16), and **REMAND** this matter to the Commissioner

for a written decision that complies with 20 C.F.R. §§ 404.1527, 416.927, clarifies

the basis of the findings as to the degree of limitations on the five-point scale

provided in 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4), and provides further

analysis at Step 3 consistent with this report.  More specifically, upon remand, the

ALJ should provide a more detailed explanation, both in her Paragraph B analysis

at Step 3, and as part of the medical opinion analysis, as to why she found

moderate, rather than marked limitations, in Plaintiff's abilities to interact with

others and to adapt and manage herself.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 30, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

31